UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
*************************************
                                    *
Travel Sentry, Inc.                 *
                Plaintiff           *
                                    *
v.                                  *
                                    *   Civil Docket No. 06-cv-118
David Tropp                         *
                Defendant           *
and                                 *
Safe Skies, LLC                     *
                Defendant           *
*************************************
```

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER**

Plaintiff Travel Sentry, Inc. hereby submits this Opposition to defendants David Tropp and Safe Skies, LLC's Motion to Dismiss, or in the Alternative, To Transfer (the "Defendants' Motion").

As shown below, both Defendants are subject to personal jurisdiction in this Court. Not only have the Defendants threatened Travel Sentry, a corporation with its principal place of business in New Hampshire, with patent infringement in New Hampshire, but they have also sent cease and desist letters to at least one of Travel Sentry's customers in New Hampshire, sold products to New Hampshire customers through their website, solicited business from one of Travel Sentry's customers in New Hampshire, and entered into an <u>exclusive</u> distribution agreement with Travelpro, a company that sells its products to New Hampshire retailers, for the exclusive distribution of the Defendants' Liberty Lock product. Further, and for these reasons, the Defendants have fallen well short of meeting their burden of showing other factors that could render the exercise of jurisdiction unreasonable or unfair, or favor the transfer of this case to New York.

I.      **FACTUAL AND PROCEDURAL HISTORY**

This is an action by Travel Sentry, Inc. ("Travel Sentry") against defendants David A. Tropp ("Tropp") and Safe Skies, LLC ("Safe Skies") (collectively, the "Defendants") for a declaration of noninfringement and invalidity of two patents held by the Defendants. John Vermilye ("Vermilye") is the founder and chief executive officer of Travel Sentry. Contrary to the allegations in the Defendants' Motion, Vermilye is not the sole "principal" of Travel Sentry; he is also joined by Joel Blumenthal ("Blumenthal"), Travel Sentry's President, who is based in Travel Sentry's New Hampshire headquarters. Allen Davidson is a stockholder.

Vermilye is the creator of a lock standard that enables the traveling public to lock their checked baggage during travel while still allowing the Transportation Security Administration ("TSA") to search the bags as needed and then re-lock them. This system centers on the use of a dual access lock in which the TSA holds exclusive control of the master key sets that allows it to open TSA-recognized and accepted baggage locks. Unlike any other system previously available to the TSA, the Travel Sentry System provides for a limited number of keys that can open a wide range of TSA-recognized and accepted luggage locks. Travel Sentry licenses its travel lock technology to luggage lock manufacturers. It is this technology that Defendants have claimed infringes their patents, resulting in the filing of this action.

Defendant Tropp is the named inventor of United States Patent Nos. 7,021,537 (the "'537 Patent") and 7,036,728 (the " '728 Patent") entitled "Method of Improving Airline Luggage Inspection." This system, which was developed after the Travel Sentry system, entails using a dual access lock that can be opened and closed by consumers and baggage screeners working for the TSA with a set of universal keys. Tropp named his dual access locks "Liberty Locks." Prior to the issuance of the '537 and '728 Patents, the Defendants sent letters to Travel Sentry and its customers creating a reasonable apprehension of a suit for infringement of the anticipated '537

2

and '728 Patents with respect to Travel Sentry's ability to license or to make, use, or sell at least some of its travel lock technology.

## The Defendants' Contacts with New Hampshire

Defendant Tropp does business as Safe Skies, LLC, a New York limited liability company with offices in New York.  Affidavit of David A. Tropp ("Tropp Aff."), ¶ 3.[1]  In 2005, the Defendants entered into a Distribution Agreement (the "Distribution Agreement") with Travelpro International, Inc. ("Travelpro"), whereby Travelpro was appointed the <u>exclusive</u> distributor of the Defendants' Liberty Lock.  Deposition of David A. Tropp ("Tropp Deposition"), attached to the Affidavit of Heidsha Sheldon ("Sheldon Aff."), as Exhibit C, pp. 321:24 – 322:16.  The Distribution Agreement provides that Safe Skies will indemnify Travelpro against all damages and costs resulting from any action or claim arising out of the use of Safe Skies' intellectual property and Travelpro may request that Safe Skies assume full control and responsibility for defense of any such action.  Distribution Agreement, § 7.9.[2]

Travelpro sells its products to New Hampshire retailers.  Blumenthal Aff., ¶ 8.  Visitors to Travelpro's website can access a link to New Hampshire retailers selling Travelpro's products, including the Liberty Lock.  Blumenthal Aff., ¶ 8.  By the Defendants' own admission, Travelpro has sold at least eight pieces of luggage with the Liberty Lock to New Hampshire retailers during the two-month period from August to September, 2005.  Tropp Aff., ¶ 10.

The Defendants also maintain a website at www.safeskieslocks.com.  Tropp Aff., ¶ 13. This website, which states that Safe Skies has "[p]artnered with Travelpro," is interactive in that

---

[1] The Tropp Affidavit was submitted by the Defendants in support of their Motion.

[2] Pursuant to Local Rule 83.11, the Distribution Agreement has been filed provisionally under seal, pending the Court's ruling on Travel Sentry's Motion to File Documents Under Seal, which has been filed with the Court concurrently with the filing of this Opposition.

visitors to the website, including New Hampshire visitors, can order and pay for the Liberty Lock online.  Blumenthal Aff., ¶ 6.  There is a section of the website titled "Business Opportunities" where the Defendants appear to be looking for individuals or businesses that have an interest in working or going into business with Safe Skies.  Blumenthal Aff., ¶ 7.  Such visitors may click on a "contact us" link that will then open a "Distributor Looking for Wholesale Application Form" or a "Retail Application Form."  Blumenthal Aff., ¶ 7.  In addition, retailers, individuals and others in New Hampshire and elsewhere looking for general information about the Defendants' product may also communicate with the Defendants through their website through a "Contact Us" Link.  Blumenthal Aff., ¶ 7.

Travel Sentry, Inc. is a Florida corporation with its principal place of business at 19 Deer Meadow Road, Durham, New Hampshire.  Affidavit of Joel Blumenthal ("Blumenthal Aff."), ¶ 2.  Travel Sentry conducts its business out of its New Hamsphire headquarters.  *Id*.  Copies of all of Travel Sentry's records are kept in its offices in New Hampshire.  *Id.*

Travel Sentry is a small start-up company and has only a few employees.  Blumenthal Aff., ¶ 3.  John Vermilye, Travel Sentry's founder and Chief Executive Officer, resides in Geneva, Switzerland but often travels to New Hampshire and other states in the performance of his duties at Travel Sentry.  Blumenthal Aff., ¶ 5.  Blumenthal is Travel Sentry's President.  He resides in New Hampshire and works out of Travel Sentry's New Hampshire headquarters.  Blumenthal Aff., ¶ 4.

In November, 2003, Tropp's counsel sent a cease and desist letter to Travel Sentry, alleging, among other things, that Travel Sentry's business violated his intellectual property rights and demanding that Travel Sentry "immediately cease and desist from any further implementation of the Travel Sentry project and use of David Tropp's misappropriated invention

4

since this project unlawfully uses Mr. Tropp's proprietary (and patent pending) method of luggage inspection . . ." Blumenthal Aff., ¶ 9. Tropp sent similar letters to Travel Sentry's customers and potential customers including a letter to Brookstone's General Counsel in New Hampshire. Tropp Deposition, p. 191:3-9 and Exhibit 9 thereof.

In 2004, Tropp also sent letters and electronic mail to Michael F. Anthony, President and CEO of Brookstone in New Hampshire attempting to solicit his business. Tropp Deposition, p. 153:10-13; 189:24-191:14 and Exhibits 23 and 24 thereof. He also attempted to contact Mr. Anthony in New Hampshire via telephone. Tropp Deposition, p. 189:24-190:25. As recently as October 19 and 20, 2005, Tropp reaffirmed in a deposition that his 2003 and 2004 cease and desist letters set forth his intention to sue Travel Sentry for patent infringement. Tropp Deposition at pp. 261:24 – 263:2; 301:5 – 302:16. At no time since then, has Tropp withdrawn his stated intention to sue Travel Sentry for infringement. Blumenthal Aff., ¶ 9.

On May 13, 2005, Travel Sentry commenced an unrelated action against Tropp and Safe Skies for defamation, Lanham Act violations, and unfair and deceptive acts and practices in the Eastern District of New York (the "New York Action"), arising out of Tropp's widespread smear campaign against Travel Sentry, falsely claiming that Vermilye stole Tropp's idea for a lock concept while Vermilye acted as a consultant at TSA. This case, on the other hand, was brought by Travel Sentry to obtain a declaration of invalidity, nonenforceability and noninfringement of the Defendants' Patents.

## II. ARGUMENT

### A. The Defendants' Motion Should Be Denied Because They Have More Than Enough Contacts With New Hampshire To Satisfy The Due Process Clause.

The Defendants correctly state that because this case involves questions concerning the validity of a patent, this Court should apply Federal Circuit law to determine whether it may

5

properly exercise personal jurisdiction over the Defendants. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). The Defendants also rightly point out that, because New Hampshire's long arm statute authorizes service upon an out-of-state defendant to the full extent permitted by the Constitution, this Court need only focus on whether the exercise of jurisdiction over the Defendants would comport with federal constitutional guarantees. *See McClary v. Erie Engine & Mfg. Co.*, 856 F. Supp. 52, 55 (D.N.H. 1994); *cf. Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). However, the rest of the Defendants' analysis is wrong.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, … he have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). Once the plaintiff has established that jurisdiction is constitutionally reasonable, the defendant has the burden to demonstrate that the presence of other considerations render the exercise of jurisdiction unreasonable. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) *citing Akro*, 45 F.3d at 1546.

The Defendants attempt to downplay their contacts with New Hampshire. They argue that their initial cease and desist letters were not directed at this forum and that, even if they were, they would not be enough to subject them to the jurisdiction of this Court. They also argue that their sales to New Hampshire residents are *de minimis*, that their interactive website is too attenuated a contact with New Hampshire, and that their exclusive distributor, Travelpro's, sales of the Liberty Lock to New Hampshire retailers cannot be considered "purposeful" conduct

6

sufficient to give rise to personal jurisdiction.  The Defendants arguments miss the mark in at least three respects.

First, while the cease and desist letter was not sent to Travel Sentry in New Hampshire, Travel Sentry has subsequently moved to New Hampshire and the ongoing effect and threat of this letter is currently suffered by Travel Sentry in New Hampshire.  Moreover, Tropp has reaffirmed under oath on October 19 and 20, 2005, his intent to sue Travel Sentry, which by then was located in New Hampshire.  And the Defendants have failed to mention that they sent a similar if not almost identical cease and desist letter to Brookstone, a customer of Travel Sentry, in New Hampshire.

Second, the Defendants' incorrectly analyze each of their contacts with the forum in isolation, instead of together.  This analysis is flawed as all contacts must be analyzed as a whole.  *See, e.g., Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (While cease and desist letters, alone, may not suffice, such letters coupled with other contacts can be enough to satisfy the requirements of personal jurisdiction).

Third, the Defendants' exclusive Distribution Agreement with Travelpro, a company who has sold Liberty Locks in New Hampshire, alone, is enough to subject them to the jurisdiction of this Court.

Moreover, the Defendants' contacts with New Hampshire consist of more than merely having directed cease and desist letters to Travel Sentry and its customers.  The Defendants maintain a website that can be accessed by New Hampshire residents.  This website is not an "essentially passive website," but a website where customers can buy Liberty Locks and communicate directly with the Defendants.  In fact, the Defendants have admitted to selling 25 Liberty Locks to New Hampshire customers through their website.  Tropp Aff., ¶ 13.  The

7

Defendants are actively soliciting business from individuals, retailers and wholesalers through their website and each of these persons can contact the Defendants if interested in partnering with them. Blumenthal Aff., ¶ 7. As such, Safe Skies' website has precisely the type of interactive and online purchasing features that satisfy the minimum contacts needed for personal jurisdiction. *See generally McBee v. Delica Co. Ltd.*, 417 F.3d 107, 124 (1st Cir. 2005) (mere existence of website visible in forum not enough to establish that personal jurisdiction is proper; "something more is necessary, such as interactive features which allow the successful online ordering of the defendants' products."); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126-27 (W.D.Pa. 1997) (discussing exercise of personal jurisdiction based on interactive websites and asserting personal jurisdiction under Pennsylvania's long arm statute based on subscription news service website).

The Defendants have also sent several letters to Brookstone's CEO in New Hampshire in an apparent effort to solicit their business or partner with them. These contacts, together with their sales in New Hampshire through Defendants' website and through Travelpro, constitute more than enough contacts with New Hampshire to satisfy due process requirements.[3]

Finally, the Defendants are subject to jurisdiction in New Hampshire by virtue of their exclusive distributorship relationship with Travelpro, who has sold their product in New

---

[3] The Defendants appear to argue that the only contact that could have given rise to this action and, therefore, be properly considered in the "minimum contacts" analysis is the cease and desist letter that the Defendants sent to Travel Sentry. The Defendants are wrong. "Although the nexus necessary to satisfy the 'arise out of or related to' requirement of the due process inquiry has not been clearly delineated by the Supreme Court, we have stated that it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard." *Inamed Corp. v. Kuzmak*, 249 F.3d at 1362. All of the Defendants' contacts with New Hampshire relate to this action as they directly relate to whether the Defendants have the exclusive right (i.e., are the '537 and '728 Patents valid and enforceable) to sell the Defendants' Liberty Lock in New Hampshire and elsewhere. The Defendants' sale and distribution of a patented product is a contact for purposes of specific personal jurisdiction and both this Court and the Federal Circuit have consistently included such contacts in their minimum contacts analysis in actions, like this one, for declaratory judgment of patent invalidity and noninfringement. *See, e.g., Breckenridge Pharmaceutical, Inc. v. Metabolite Labs., Inc.* 444 F.3d 1356, 1369 (Fed. Cir. 2006); *Inamed*, 249 F.3d at 1362; *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1459 (Fed. Cir. 1997).

8

Hampshire. In assessing the nature and sufficiency of a party's contacts with the forum state, the Federal Circuit employs the "stream of commerce" theory. *See, e.g., Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 427 (Fed. Cir. 1996); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994). Under the stream of commerce theory, "a plaintiff may establish that a defendant has "minimum contacts" with the forum state by showing that the defendant placed its products into the stream of commerce, knowing that those products would likely make their way into the economy of the forum state." *R&J Tool, Inc. v. Manchester Tool Co.*, 2000 DNH 097, 2001 WL 1636435, * 3 (D.N.H. Apr. 21, 2001).

On several occasions, both the Federal Circuit and this Court have held that personal jurisdiction exists under circumstances very similar to this case. For example, in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, the court found that it was reasonable for a court in Virginia to exercise jurisdiction over a Chinese manufacturer of allegedly infringing ceiling fans where it was alleged that the manufacturer was "selling ceiling fans embodying the patented invention to customers … [in] Virginia through *intermediaries*." 21 F.3d 1558, 1563, 1572 (Fed. Cir. 1994) (emphasis added). Given the fact that the fans were being sold in Virginia, albeit through distributors, the defendant "knew, or reasonably could have foreseen, that a termination point of the channel was Virginia." *Id.* at 1564.

Similarly, in *R&J Tool, Inc. v. The Manchester Tool Co., Inc.,* this Court held that it had jurisdiction over a defendant that had dealer agreements with at least two New Hampshire businesses, which purchased and sold the defendants' products. 2001 WL 1636435, * 4 (D.N.H. 2001). The defendant had also contracted with businesses outside of New Hampshire to market and distribute its products in this district. *Id.* The Court found the exercise of personal

jurisdiction proper even though, as with Defendants here, the sales of its products in New Hampshire accounted for only a small portion of its total national sales. *Id.*

Likewise, in *Braley v. Sportec Products Co.*, this Court held that the exercise of jurisdiction over an out-of-state corporation was proper because the defendant's product had appeared in catalogues that were distributed to New Hampshire consumers, and was available for sale on the Internet through various websites, which were accessible to New Hampshire consumers. 2002 D.N.H. 133, 2002 WL 1676293, * 4 (D.N.H. Jul. 16, 2002). "Sportec sold its product to the catalogue and internet companies so that its product might be distributed to the market at large, including New Hampshire." *Id.* Here, Safe Skies' products are available through a variety of channels to the market at large, including, as Defendants concede, in New Hampshire.[4]

Finally, in *Genetic Implant Systems v. Core-Vent Corp.*, the defendant patentee had entered into a an exclusive distribution and marketing agreement with a Delaware Corporation that sold the patented product in Washington. 123 F.3d 1455, 1457 (Fed. Cir. 1997). The defendant sent three letters to an accused infringer in Washington, and the accused infringer brought a declaratory judgment action in Washington federal district court. *Id*. The Court found that the most significant contact was the defendants' distribution agreement with the distributor and the distributor's sales of the patented product in Washington. *Id.* at 1458-59. The court noted that, as here, the distribution agreement between the defendant and the distributor created a relationship beyond the payment of royalties because, like Safe Skies did with Travelpro, the defendants agreed to indemnify the distributor for liability arising from any third party patent

---

[4] Surprisingly, the Defendants cite both *R&J Tool, Inc*. and *Sportec Products Co*. in support of their Motion. As shown above, these cases uphold the exercise of personal jurisdiction over the defendants in circumstances very similar to this case.

10

infringement action related to the distributor's sale, use or making of the covered products. *Id.* at 1459. The Court concluded that the exercise of personal jurisdiction over the defendant comported with due process requirements even though the distributor was not incorporated or headquartered in the forum state. *Id.* "[The distributor] is present in Washington in the sense that it promotes and sells the [defendant's] patented products in that state; thus, it is transacting business 'in-state.'" *Id.; see also Breckenridge Pharmaceutical, Inc. v. Metabolite Labs.*, 444 F.3d 1356, 1366-67 (Fed. Cir. 2006) (where, as here, a defendant-licensor has a relationship with an exclusive distributor who conducts business in the forum state, the defendant will be subject to personal jurisdiction even if the distributor is not headquartered or incorporated in that state).

In this case, by entering into an exclusive distribution agreement with Travelpro, the Defendants purposefully availed themselves of the privilege of conducting business in New Hampshire. Travelpro has the exclusive right to market and distribute the Defendants' products in the United States and Travelpro sells its products to retailers in New Hampshire. Just as in *Core-Vent* and *Metabolite Labs.*, the distribution agreement between the Defendants and Travelpro provides that Safe Skies will indemnify Travelpro against all damages and costs resulting from any action or claim arising out of the use of Safe Skies' intellectual property. This creates a ongoing relationship between the Defendants and Travelpro, beyond simply a payment of royalties. Therefore, by entering into the exclusive distribution agreement, the Defendants knew or should have reasonably known that New Hampshire was a likely destination of its products and should reasonably have anticipated that they may be brought into court here. The fact that the actual sales of the Defendants' products in New Hampshire may account for only a small portion of its total sales does not make the exercise of personal jurisdiction over the Defendants improper. *See R&J Tool*, 2001 WL 1636435 at * 4 *citing N. Am. Philips v. Am.*

*Vending Sales, Inc.,*, 35 F.3d 1576, 1577 (Fed. Cir. 1994) (holding that lower court had personal jurisdiction over defendant notwithstanding defendants' assertion that its sales in the forum were modest and negligible); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) (holding that although defendants' annual sales in forum state amounted to less than one percent of its total national sales, it is "unquestionable that New Hampshire jurisdiction over a complaint based on those contacts would ordinarily satisfy the requirement of the Due Process Clause that a State's assertion of personal jurisdiction over a nonresident defendant be predicated on 'minimum contacts' between the defendant and the State.").

> B.  **Exercising Jurisdiction Here Is Reasonable And Consistent With The Concepts Of Fair Play And Substantial Justice.**

Where personal jurisdiction otherwise comports with due process, the defendant may still defeat it on constitutional grounds if he can make "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Akro Corp.*, 45 F.3d at 1549. "[S]uch defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Id. (quoting Beverly Hills Fan*, 21 F.3d at 1568). The Defendants cannot show that this is such a case. *See id.*

Reasonableness is determined by balancing several factors, namely: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies. *Viam Corp.*, 84 F.3d at 429.

The burden on Defendants of litigating this case in New Hampshire is not particularly significant. The Defendants, being located in New York, are only a few hundred miles from

12

New Hampshire. Further, "defending in a foreign jurisdiction almost always presents some measure of inconvenience, and hence this factor becomes meaningful only where a party can demonstrate a special or unusual burden." *Gray v. St. Martin's Press, Inc.*, 929 F.Supp. 40, 49 (D.N.H. 1996) (internal quotation omitted).

In addition, contrary to the Defendants' suggestion, the New York Action is not "related" to this action. The New York Action involves wholly different claims by Travel Sentry against the Defendants for defamation, Lanham Act violations and unfair practices arising out of the Defendants' false statements to a number of Travel Sentry's customers and potential customers, as well as to government agencies and members of the media. The facts giving rise to these claims in the New York Action are not germane in this case. This case, on the other hand, involves whether Defendants have valid and enforceable patents and whether Travel Sentry somehow infringes those patents. While a small portion of information discovered in the New York Action may be relevant here (namely, whether Tropp conceived and first reduced to practice his Liberty Lock concept before Vermilye conceived and first reduced to practice the Travel Sentry concept), the ultimate determination in the New York Action, whether the statements made by Tropp are defamatory and commercially unfair, is wholly unrelated to the validity, enforceability or infringement of the patents at issue here.[5]

The fact that John Vermilye is a resident of Switzerland also fails to support Defendants' argument. Being in Switzerland, Mr. Vermilye will have to travel essentially the same distance whether this case is litigated here or in New York. Mr. Vermilye already travels to New

---

[5] The Defendants make much of the fact that none of the party or third-party witnesses that were deposed in the New York Action resided in New Hampshire and that Travel Sentry's Initial Disclosures in the New York Action did not identify any witnesses located in New Hampshire. This, of course, and as explained above, is because the issues in the New York Action are completely different from the issues in this case and, accordingly, the location of the witnesses in the New York Action may be different than the witnesses in this case and should have no bearing on whether the exercise of jurisdiction in this Court is proper.

Hampshire on a regular basis to attend to the business of Travel Sentry and, therefore, New Hampshire would be the most convenient forum for him.  In addition, Joel Blumenthal, the President of the Company, resides and works in New Hampshire.  Finally, given that Travel Sentry's offices are located in New Hampshire, any documents that are relevant to Travel Sentry's sales and the Travel Sentry concept will be located here and not in New York.

Because the plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience, the Defendants have not met their burden of showing a compelling case that the exercise of jurisdiction over them would be unreasonable or unfair.  *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995); *cf. Beverly Hills*, 21 F.3d at 1568.

### C.  Venue In This District Is Proper.

Because this Court has personal jurisdiction over the Defendants, it must necessarily conclude that venue is proper in this district.  *R&J Tool, Inc.*, 2001 WL 1636435 at * 6; *see also N. Am. Philips*, 35 F.3d at 1577 n. 1 ("The venue issue is subsumed in the personal jurisdiction issue.  Venue lies ipso facto if we hold, as we do, that the district court has personal jurisdiction over [the defendants]").  "In other words, because the court may exercise personal jurisdiction over [the defendant], section 1391(c) provides, at least for venue purposes, that [the defendant] 'resides' in this District.  That, in turn, compels the conclusion that venue is proper in this district."  *R&J Tool, Inc.*, 2001 WL 1636435 at * 6.

### D.  The Defendants Have Failed To Show That A Balancing of Conveniences Strongly Favors A Transfer.

To prevail on a motion to transfer under § 1404(a), the Defendants must show "both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency <u>strongly</u> favor litigating the claim in the alternative forum."  *Braley*, 2002 WL 1676293 at *6 (*quoting Iragorri v. Int'l Elevator, Inc.,* 203 F.3d 8, 12 (1st Cir. 2000)) (emphasis

14

added). Courts evaluate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Id.* (internal quotations omitted). The factors of convenience to be considered by this Court include: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process; (5) the cost of obtaining willing witnesses; and (6) trying the case the most expeditiously and inexpensively. *See Braley,* 2002 WL 1676293 at * 6 (internal citations omitted)*; cf. Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) .

"Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Braley*, 2002 WL 1676293 at *6 (*quoting Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1354 (1st Cir. 1992)). "Transfer is inappropriate if the effect is merely to shift inconvenience from one party to another." *Buckley v. McGraw-Hill, Inc.*, 762 F. Supp. 430, 439 (D.N.H. 1991).

The balancing of conveniences in this case does not weigh in favor of transfer. The burden on the Defendants to travel to New Hampshire would be at least equal to the burden placed on the Plaintiff to travel to New York. Although Defendants attempt to portray themselves as the "David" and Travel Sentry as the "Goliath," both Travel Sentry and Safe Skies are very small, start-up businesses with limited resources. Moreover, in the New York Action, Defendants have vigorously litigated that case and are represented by Jenner & Block, an "AmLaw 100" firm that charges among the highest hourly rates in the country. The same Jenner attorneys are representing Defendants in this case. Accordingly, Defendants' suggestion of "hardship" in having to litigate in this Court does not ring true.

Further, Travel Sentry's offices and documents are located in New Hampshire as well as its President, Mr. Blumenthal. Therefore, all of Travel Sentry's documents and other evidence

15

relevant to Defendants' case would be located here.  Moreover, as stated above, while John Vermilye does not reside in New Hampshire, he travels here regularly and is amenable to producing discovery in New Hampshire.  Blumenthal Aff., ¶ 5.  The Defendants simply have not shown that litigating here would be a significant burden or that documents and evidence are more likely to be located in New York.  To the extent that discovery is taken of other third-parties, they may be located at a variety of locations outside of both New Hampshire and New York, so that litigating here is no more burdensome than in New York.  Finally, as more fully explained above, the pendency of the unrelated New York Action, which is scheduled for trial in less than two (2) months, has no bearing on whether litigating this case here is burdensome on the Defendants.  Because the balance of conveniences is not in favor of the Defendants, Travel Sentry's choice of forum should not be disturbed.  *See, e.g., Braley*, 2002 WL 1676293 at * 7 (finding that balancing of conveniences did not favor transfer where the burden on the plaintiff as a result of a transfer would be at least equal to the burden on the defendant to litigate in the forum).  The bottom line is that a transfer of this action away from Travel Sentry's choice of forum would simply be a transfer of convenience from Travel Sentry to Defendants.  *See McGraw Hill,* 762 F. Supp. at 439.  Without more, Defendants fail to show an adequate basis for transfer.

## III.  CONCLUSION

For the foregoing reasons, this Court should deny the Defendants' Motion to Dismiss, or in the Alternative, to Transfer.

**SEYFARTH SHAW, LLP**

Dated: June 22, 2006

  /s/ William L. Prickett
William L. Prickett (Mass. BBO # 555341)
(admitted *pro hac vice*)
Heidsha Sheldon (Mass. BBO# 655263)
(admitted *pro hac vice*)
SEYFARTH SHAW, LLP
Two Seaport Lane
Suite 300
Boston, MA 02210
(617) 946-4800
wprickett@seyfarth.com
hsheldon@seyfarth.com

**PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, PLLP**

Dated: June 22, 2006

Peter G. Callaghan, NHBAR #6811
Preti, Flaherty, Beliveau, Pachios & Haley, PLLP
57 North Main Street
P.O. Box 1318
Concord, NH 03302-1318
(603) 410-1500 (direct)
pcallaghan@preti.com

**Counsel for Travel Sentry, Inc.**

BO1 15784279.1 / 37781-000005